UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| EDWARD C. HANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 21-3093 |
| | ) | |
| HEATHER MILLER, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding pro se and presently incarcerated at Western Illinois Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging Eighth Amendment claims for deliberate indifference to a serious medical need and inhumane conditions of confinement, and a First Amendment retaliation claim. The matter comes before this Court for ruling on the parties' respective Motions for Summary Judgment. (Docs. 93, 106, 108).

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was incarcerated at Western Illinois Correctional Center ("Western"). Defendants were employed at the facility in the following capacities: Defendants Miller, Roberts, Givens, and Wolfe were nurses; and, Defendant Ashcraft was the healthcare unit administrator. Defendant Wexford Health Sources, Inc. ("Wexford") was the private company contracted to provide medical services at Illinois prisons. Defendant Wexford employed Defendants Miller, Roberts, Givens, and Wolfe.

Defendant Miller examined Plaintiff on April 21, 2019, for a headache Plaintiff described as a throbbing pain behind his left eye. (Doc. 106-6 at 1). Plaintiff reported pain as a "9" on a scale of 1-10, with 10 being the greatest amount of pain. *Id.* He also reported sensitivity to light (photophobia). Defendant Miller prescribed over-the-counter pain medication, and she advised that cool compresses and a quiet, dark room may be beneficial. *Id.*

Plaintiff testified that he had also reported "a whole lot of little bumps" ranging "from the back of my forehead coming down [the left side of] my face in rows" during the same examination. Pl.'s Dep. 51:18-24. Plaintiff testified that Defendant Miller opined that the bumps were a heat rash that would resolve on its own because Plaintiff had reported "feeling hot" for a couple days prior to the visit. *Id.* 53:15-18; 57:19-23. Plaintiff testified that Defendant Roberts "more or less confirmed what [Defendant] Miller was saying." *Id.* 63:8-11. The parties dispute whether Defendant Miller referred Plaintiff to the physician following the examination, but Plaintiff testified that the nurses told him that they were "going to call [him] in a couple of days [for sick call], which they did." *Id.* 55:20-21.

Two days later, the bumps on Plaintiff's face "just swole up like a beehive." *Id.* 64:9. The prison's physician diagnosed shingles, prescribed anti-viral and pain medications, and referred Plaintiff for an emergency ophthalmologist consult. (Doc. 106-6 at 2). Plaintiff saw the ophthalmologist later that day. (Doc. 106-6 at 3-4). Upon his return to the prison, officials housed Plaintiff in the receiving unit for medical isolation per the physician's orders. *Id.* at 3.

Plaintiff remained in medical isolation for approximately 14 days. Pl.'s Dep. 72:7-9. According to Plaintiff, the cell had no lights, hot water, or outlets, and an unidentified correctional officer denied his request for an extra medical blanket to remedy the relatively cold temperatures in his cell. *Id.* 72:15-73:13. Plaintiff testified that he was not able to go to the chow hall or move around, and that the conditions were akin to punitive segregation. *Id.* 73:18-19. Plaintiff testified that Defendants Miller and Roberts did nothing to help him get moved out of the cell during his isolation. *Id.* 99:2-24. Officials moved Plaintiff to general population on May 3, 2019. (Doc. 106-6 at 6).

Officials took Plaintiff to the emergency room on May 15, 2019, following a seizure-like episode he experienced during religious services. *Id.* at 7. Officials admitted him to the prison infirmary when he returned to the prison the next day, and Plaintiff remained so housed until June 3, 2019. *Id.* at 8-73. Medical staff checked on Plaintiff at least twice a day during this time. *Id.*

Plaintiff filed a grievance on May 17, 2019, about his time in the isolation cell, the medical conditions that predicated it, and the lasting effects and continued treatment. (Doc. 77-1 at 108-09). He does not mention any defendant or medical officer by name. *Id.* The warden granted Plaintiff request to review the grievance on an expedited basis on May 24, 2019. *Id.* at 108. The grievance officer recommended denial of the grievance on June 21, 2019, after she had

received responses from Defendant Ashcraft and non-medical personnel in the segregation unit. *Id.* at 107.

The prison physician prescribed Neurontin, twice a day, on May 24, 2019. (Doc. 106-6 at 39). The medication is used to treat seizures and nerve pain, including nerve pain associated with shingles. (Doc. 106-4 at 4); Pl.'s Dep. 49:13-16 (taking Neurontin and other medications for nerve pain). Plaintiff testified that Defendants Givens or Wolfe failed to provide the morning doses of Neurontin on May 25, 27, and 29, 2019, and the evening doses on May 28 and 29, 2019. Pl.'s Dep. 108:7-109:17. The lack of notations in the medication administration reports (MAR) indicating that a nurse dispensed the medication corroborates Plaintiff's testimony that he missed doses in the morning of May 25th and the evening of May 29th. (Doc. 106-6 at 80). The MARs disclose that Defendant Givens dispensed all of Plaintiff's other medications on May 25th and in the morning of May 29th. *Id.* at 78. Defendant Roberts dispensed the evening doses of Plaintiff's medications on May 25-28, 30-31, 2019. *Id.* Defendant Roberts' timecards indicate that she did not work on May 29, 2019. (Doc. 106-2 at 13).

According to the MARs, Plaintiff did not receive any of his prescribed medications in the evening on May 29th, or in the morning on May 30th, although a notation Defendant Givens made in Plaintiff's Infirmary Progress Notes on May 30, 2019, states, "meds given before sun up."[1] (Doc. 106-6 at 59, 78).

Defendant Ashcraft did not provide medical treatment to Plaintiff or dispense his medications. She responded to Plaintiff's May 17, 2019, grievance, and she signed off on a memo to the Records Office related to Plaintiff's April 23, 2019, medical furlough to see the

---

[1] Plaintiff's medications were provided before sunrise and after sunset to accommodate his religious practices.

ophthalmologist that summarized the date, reason, and instructions "to bring Offender and information packet to HCU upon return to [the prison]." (Docs. 108-2; 108-3).

## ANALYSIS

### Medical Claim

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). The parties do not dispute that Plaintiff suffered from an objectively serious medical need.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. Courts defer to treatment decisions made by medical professionals unless the evidence shows that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

A treatment decision permits an inference that the medical provider acted with deliberate indifference only when the decision constitutes "such a substantial departure from accepted

professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (internal quotations omitted). Persisting in a course of treatment known to be ineffective, failing to follow an existing protocol, delaying treatment without penological justification, and refusing to follow a specialist's recommendations may permit an inference that a medical professional failed to exercise the appropriate judgment. *Id.* at 729-30.

Plaintiff asserts that Defendant Miller acted with deliberate indifference because she failed to recognize the potential seriousness of the bumps on his face, misdiagnosed them as a heat rash, and failed to refer him to a doctor immediately. The record does not permit an inference that Plaintiff's condition at first examination required immediate referral to a physician, nor does it suggest that Defendant Miller knew that a two-day delay until Plaintiff would be seen in sick call was likely to cause Plaintiff appreciable harm. Any misdiagnosis or failure to recognize that Plaintiff's bumps were shingles is not sufficient to impose constitutional liability. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (collecting cases).

Defendants Miller and Roberts were required to follow the physician's orders once made unless "it is apparent that the physician's orders will likely harm the patient." *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010); *Reck v. Wexford Health Sources*, 27 F.4th 473, 485-86 (7th Cir. 2022). The record does not permit a reasonable inference that the physician's isolation of Plaintiff in a cool cell without light was likely to cause Plaintiff harm given Plaintiff's previous

complaints of migraine headaches and photophobia and the potential contagiousness of Plaintiff's shingles. Plaintiff does not allege that medical staff denied him medications during his isolation, that he complained about any medical conditions that required removal from that cell, or that medical staff failed to follow instructions from the physician or ophthalmologist. To the extent that Plaintiff asserts that Defendant Givens' and Wolfe's alleged denial of medications in late May 2019 violated the Eighth Amendment, the occasional missed doses of medication, viewed in light of the totality of medical care Plaintiff received, do not permit a reasonable inference that they were deliberately indifferent

Defendant Ashcraft did not provide medical treatment to Plaintiff or other inmates in her capacity as healthcare unit administrator. The record discloses that Plaintiff had access to healthcare during the relevant period, and that medical staff responded to Plaintiff's complaints without unnecessary delay. Because access to medical care was not an issue, Defendant Ashcraft was entitled to defer to the expertise of the professionals providing medical care without fear of liability. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (nonmedical prison officials "are entitled to defer to the judgment of jail health professionals" so long as the inmate's complaints are not ignored (citations omitted)). Plaintiff cannot prevail against Defendant Wexford just because this defendant employed the medical staff who provided care. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (no *respondeat superior* liability under § 1983).

The record does not permit a reasonable inference that Defendants acted with deliberate inference. The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's Eighth Amendment right to adequate medical care. Because there is no underlying constitutional violation, Plaintiff's claims against Defendant Wexford also fail. *City of Los*

*Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).

### Conditions-of-Confinement Claim

A prison official violates the Eighth Amendment if he or she denies a prisoner his or her basic human needs, but only if the official is aware of and deliberately indifferent to an objectively serious risk of harm. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008). The conditions at issue must be "sufficiently serious" such that "a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Only extreme deprivations, viewed in relation to contemporary standards of decency, make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Conditions that do not give rise to constitutional concerns on their own accord may nonetheless violate the Eighth Amendment if endured over a significant length of time, *see Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), or where a multitude of conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Giles v. Godinez*, 914 F.3d 1040, 1052 (7th Cir. 2019) (citations omitted). Absent a specific deprivation of a single human need, "nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). Prison conditions may be uncomfortable and harsh without violating the Constitution. *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir. 1997).

Plaintiff cannot hold Defendants liable for the physician's decision to house him in medical isolation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not

attach unless the individual defendant caused or participated in a constitutional deprivation."). The memo Defendant Ashcraft signed indicating that officials should bring Plaintiff to the healthcare unit upon his return from a medical furlough does not permit an inference that she had authority to dictate where Plaintiff would be housed, or that she was otherwise responsible for the decision. The non-defendant correctional officer, not medical staff, denied Plaintiff's request for a blanket.

The extent to which Plaintiff was deprived of light and the temperatures in his cell during the 14 days he remained in isolation is not clear. Assuming Plaintiff could show the requisite deprivation, the record does not permit a reasonable inference that Defendants knew that housing Plaintiff in a cool, dark cell during a time he was potentially contagious was likely to cause Plaintiff harm or exacerbate the medical conditions with which he had been diagnosed. The isolation does not appear to have lasted longer than was necessary, and nothing suggests that Defendants were responsible for fixing any issues related to hot water or the lack of outlets.

The record does not permit a reasonable inference that Defendants were personally responsible for the deprivations Plaintiff alleges while he was housed in isolation, or that Defendants acted with deliberate indifference during this time. The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's Eighth Amendment right to humane conditions of confinement.

## Retaliation Claim

To prevail on a retaliation claim, the Plaintiff must show that he engaged in activity protected by the First Amendment; he suffered a deprivation that would likely deter First Amendment activity in the future; and the First Amendment activity motivated the decision to take retaliatory action. *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018); *Bridges v. Gilbert*,

557 F.3d 541, 553 (7th Cir. 2009). Once a plaintiff establishes a prima facie case of retaliation, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). Plaintiff's grievance activity is protected under the First Amendment. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

Plaintiff asserts that Defendants Givens and Wolfe denied him Neurontin on at least five occasions in late May 2019. Plaintiff's recollection of the dates he was denied medication is not consistent with the medical records provided, but, if accepted by the trier of fact, Plaintiff's testimony is sufficient to permit a reasonable inference that he suffered a deprivation likely to deter future speech. *Id.* ("[W]e have held that denial of medical treatment is a deprivation likely to dissuade a reasonable person from engaging in future First Amendment activity.").

Plaintiff cannot prevail without showing a causal connection between the protected activity and the alleged retaliatory conduct. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Assuming the prison officials routinely question all officials named in grievances about the complained-of events, Plaintiff's failure to specifically name Defendants Givens and Wolfe in the grievance at issue belies the inference that the grievance officer would have questioned them about it. The record does not otherwise support an inference that these defendants were aware of Plaintiff's protected conduct. The fact that the alleged deprivations occurred after Plaintiff had filed a grievance is not enough. *Manual v. Nalley*, 966 F.3d 678, 681 (7th Cir. 2020) ("Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." (citations and quotations omitted)).

No reasonable inference exists that Plaintiff's protected activity motivated Defendants' actions. The Court finds that no reasonable juror could conclude that Defendants Givens and Wolfe violated Plaintiff's First Amendment rights.

**Plaintiff's Motion for Summary Judgment (Doc. 93)**

Plaintiff moves for summary judgment against Defendant Ashcraft on his Eighth Amendment claims for deliberate indifference to a serious medical need and inhumane conditions of confinement. Viewed in the light most favorable to Defendant Ashcraft, the record does not permit a reasonable inference that she was personally involved in any decisions regarding Plaintiff's cell assignment or responsible for any adverse conditions Plaintiff endured. Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Summary Judgment [93] is DENIED.**

2) **Defendants' Motion for Summary Judgment [106][108] are GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated. Plaintiff remains responsible for any balance owed towards the $350.00 filing fee.**

3) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to**

**appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 22nd day of August, 2023.

                                               *s/Sara Darrow*
                                               SARA DARROW
                                             CHIEF U.S. DISTRICT JUDGE